IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME REYES, JR., Deceased through his successors in interest MIRELLA REYES and JAIME REYES, SR., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF FRESNO, et al., <br><br> Defendants. _____ / | CASE NO. CV F 13-0418 LJO SKO <br><br> **ORDER ON DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS** <br> (Doc. 14) |

**PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider, or reconsider, consent to a U.S. Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. If a trial trails, it may proceed with little advance notice, and the parties and counsel may be expected to proceed to trial with less than 24 hours notice. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California. Case management difficulties, including trial setting and interruption, are avoided with the parties' consent to conduct of further proceedings by a U.S. Magistrate Judge.

## INTRODUCTION

Defendants City of Fresno ("City") and City Police Chief Jerry Dyer ("Chief Dyer") seek to dismiss several of plaintiffs Mirella Reyes ("Ms. Reyes") and Jaime Reyes, Sr.'s ("Mr. Reyes'") claims arising from the shooting death of Mr. and Ms. Reyes' son Jaime Reyes, Jr. ("Jaime") by four City Doe Officers ("Officers 1-4"). Mr. and Ms. Reyes pursue survival claims for Jaime's estate and wrongful death claims for themselves under 42 U.S.C. 1983 ("section 1983") and California laws. The City and Chief Dyer (collectively "defendants") challenge certain claims as legally barred and lacking sufficient facts. Mr. and Ms. Reyes respond that most of the challenged claims are sufficiently pled. This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the May 21, 2013 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES in part Mr. and Ms. Reyes' claims.

## BACKGROUND[1]

### Pursuit Of Jaime

During the afternoon of June 6, 2012, Officers 1-4 arrived at Mr. and Ms. Reyes' home to inquire as to Jaime's whereabouts. Jaime was neither present nor dwelled at the home and was suspected of burglarizing a neighbor's home. Ms. Reyes informed two of the officers that Jaime "was suffering from mental disturbance due to methamphetamine use." Officers 1-4 began to look for Jaime in the

---

[1] The factual recitation generally summarizes Mr. and Ms. Reyes' Complaint for Damages, Declaratory and Injunctive Relief ("complaint"), the target of defendants' challenges.

2

neighborhood. Two blocks from Mr. and Ms. Reyes' home, Officers 1 and 2 made contact with Jaime, who was obviously "emotionally disturbed and/or intoxicated." Jaime began to run.

Officers 1 and 2 pulled their vehicle next to Jaime and spoke to Jaime, who continued to run away. Officers 1 and 2 exited their vehicle and pointed their guns at Jaime, who carried nothing and ran with this back to Officers 1 and 2.

Officers 3 and 4 cut Jaime off, exited their vehicle, and pointed their guns at Jaime. Jaime hopped a chain-link fence and ran into an empty football field with his back to Officers 1-4 and clearly carrying nothing in his hands.

### Fatal Shooting Of Jaime

Without warning, Officers 1-4 fired guns at Jaime, who was hit and fell face down to the ground. At the time of gun firing, there was a chain link fence and a distance no more than five yards between Jaime and Officers 1-4. Jaime had not threatened Officers 1-4 and had run from them "with open hands" and was unarmed. While Jaime lay motionless on the ground and without warning, Officers 1-4 fired again on Jaime. Jaime was emotionally disturbed and/or intoxicated and required urgent medical care which Officers 1-4 did not provide. Officers 1-4 frisked and handcuffed Jaime "as he lay severely wounded on the ground." Several minutes elapsed before Officers 1-4 provided first aid to Jaime, and 20 minutes elapsed before paramedics arrived. Jaime was pronounced dead after emergency hospital surgery.

### The Complaint's Claims

The complaint alleges that Jaime "did not pose a significant and immediate threat of death or serious physical injury" and that use of deadly force "was not justified or lawful." The complaint accuses Officers 1-4 of "excessive and unreasonable actions" to create a risk of harm to Jaime and "an escalation of events" leading to Jaime's shooting death. The complaint alleges section 1983 unlawful detention, excessive force, deliberate indifference to medical needs and related survival and wrongful death claims which will be addressed below.

### DISCUSSION

### F.R.Civ.P. Motion To Dismiss Standards

Defendants seek to dismiss several of the complaint's section 1983 and related claims as legally

3

barred and lacking sufficient facts.

A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

A plaintiff suing multiple defendants "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them." *Gauvin v. Trombatore*, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988). "Specific identification of the parties to the activities alleged by the plaintiffs is required in this action to enable the defendant to plead intelligently." *Van Dyke Ford, Inc. v. Ford Motor Co.,* 399 F.Supp. 277, 284 (D. Wis. 1975).

With these standards in mind, this Court turns to defendants' challenges to several of the

complaint's claims.

## **Unlawful Detention**

The complaint's (first) section 1983 claim alleges deprivation of the "right to be free from unreasonable searches and seizures as secured by the Fourth and Fourteenth Amendments." Defendants characterize the claim to allege "illegal detention." Mr. and Ms. Reyes respond that the complaint does not allege a claim for unlawful detention or arrest prior to use of deadly force but rather alleges "unlawful seizure . . . predicated on the Defendant officers' conduct causing the unconstitutional shooting of Jaime."

### *Section 1983 Requirements*

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 813. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

"Under Rule 8(a), a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. U.S. Dept. of Housing and Urban Development*, 554 F.3d 525, 528 (5th Cir. 2008).

### *Physical Force Or Show Of Authority*

Defendants contend that an illegal detention claim fails as a matter of law given complaint allegations that Jaime "was not seized prior to the use of deadly force." Defendants argue that the complaint lacks facts that Officer 1-4's "pre-shooting conduct rose to the level of a constitutional violation," given the complaint's concession that Officers 1-4 investigated Jaime's involvement in a neighborhood burglary and Jaime ran from Officers 1-4. Mr. and Ms. Reyes respond that the shooting of Jaime "constitutes a seizure."

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement . . . through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254, 127 S.Ct. 2400 (2007) (internal quotations and citations omitted). A "person is not 'seized' within the meaning of the Fourth Amendment unless 'by means of physical force or show of authority, his freedom of movement is restrained.'" *United States v. Smith*, 633 F.3d 889, 892 (9th Cir. 2011) (quoting *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870 (1980)). "In the absence of physical force, in order to constitute a seizure, an officer's show of authority must be accompanied by 'submission to the assertion of authority.'" *Smith*, 633 F3d at 893 (quoting *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547 (1991)).

Mr. and Ms. Reyes fail to demonstrate that, under the complaint's alleged facts, the shooting of Jaime constituted a seizure. The complaint no less than suggests that Jaime ran from Officers 1-4 when they first fired. Based on the complaint, Officer 1-4's show of authority had an opposite effect to restrain Jaime's freedom of movement in that Jaime ran and did not restrain himself.

### *Reasonable Suspicion*

Defendants further contend that based on the complaint's allegations, Officers 1-4 "had reasonable suspicion to detain decedent after he fled from them." A person's "headlong," "unprovoked" flight upon seeing a police officer, when it occurs in a high-crime neighborhood, is sufficient to establish reasonable suspicion that the person is involved in criminal activity. *Illinois v. Wardlow*, 528 U.S. 119, 124–25, 120 S.Ct. 673 (2000). "Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite." *Wardlow*, 528 U.S. at 125, 120 S.Ct. 673. "Headlong flight—wherever it

1  occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is
2  certainly suggestive of such." *Wardlow*, 528 U.S. at 124, 120 S.Ct. 673.  Defendants conclude that
3  Officers 1-4 "had a lawful basis to try to detain, if not arrest, decedent." Mr. and Ms. Reyes respond that
4  factual issues arise as to Officers 1-4's provocation given complaint allegations that Jaime was
5  emotionally disturbed and/or intoxicated and simply ran.

6  Although "avoidance of the police, standing alone, does not give rise to a particularized,
7  reasonable suspicion that a person is committing a crime," *Liberal v. Estrada*, 632 F.3d 1064, 1078 (9th
8  Cir. 2011), the complaint suggests reasonable suspicion given its acknowledgment that Jaime was a
9  burglary suspect.  His status as a suspect and his flight raise inferences of reasonable suspicion to detain.
10 A purported unlawful detention/seizure claim fails and is subject to dismissal.  Mr. and Ms. Reyes offer
11 nothing meaningful to support such claim.

### Deliberate Indifference To Medical Needs

13 Defendants construe the complaint's (first) section 1983 claim to allege deliberate indifference
14 to Jaime's medical needs because Officers 1-4 delayed to provide first aid.  Defendants fault deliberate
15 indifference allegations given allegations that paramedics were summoned and the absence of an
16 officer's duty to provide CPR or other first aid to an injured suspect.

17 A pretrial detainee's claim of failure to provide care for serious medical needs is analyzed under
18 the substantive due process clause of the Fourteenth Amendment.  *Simmons v. Navajo County, Az*., 609
19 F.3d 1011, 1017 (9th Cir. 2010); *Lolli v. County of Orange*, 351 F.3d 410, 418-419 (9th Cir. 2003); *see*
20 *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106, 123 S.Ct.
21 872 (2003).  "The due process clause requires responsible governments and their agents to secure
22 medical care for persons who have been injured while in police custody."  *Maddox v. City of Los*
23 *Angeles*, 792 F.2d 1408, 1405 (9th Cir. 1986).  "With regard to medical needs, the due process clause
24 imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody ha[ve] the
25 established right to not have officials remain deliberately indifferent to their serious medical needs.'"
26 *Gibson*, 290 F.3d at 1187 (quoting *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996)).  "Under the
27 Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed
28 medical care only if the person 'knows of and disregards an excessive risk to inmate health and safety.'"

*Gibson*, 290 F.3d at 1187 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)).

Deliberate indifference is shown by "a purposeful act or failure to respond to a [detainee's] pain or possible medical need, and harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Deliberate indifference may be manifested when officials "deny, delay or intentionally interfere with medical treatment." *Jett*, 439 F.3d at 1096 (citing *McGuckin* 974 F.2d at 1060 (internal quotations omitted)).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Indifference to "medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980). Under the deliberate indifference standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. "But if a person is aware of a substantial risk of serious harm, a person may be liable for neglecting a [detainee's] serious medical needs on the basis of either his action or his inaction." *Gibson*, 290 F.3d at 1188 (alteration in original). "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060.

Defendants contend that their duty for Jaime's medical needs was satisfied in that Jaime "was taken promptly to a hospital that provided the treatment necessary for his injury." *See City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 245, 103 S.Ct. 2979 (1983); *see also Maddox*, 792 F.2d at 1415 ("the jury could reasonably have concluded that the defendant police officers fulfilled their obligation under the due process clause when they promptly took the defendant to the hospital to obtain medical care"). Defendants argue that Officers 1-4 need not have performed CPR. "We have found no authority suggesting that the due process clause establishes an affirmative duty on the part of police officers to render CPR in any and all circumstances." *Maddox*, 792 F.2d at 1415. "Due process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." *Maddox*, 792 F.2d at 1415; *see Tatum v. City and County of San*

*Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006) ("a police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment, even if the officer did not administer CPR").

Mr. and Ms. Reyes respond that they do not base a deliberate indifference claim on failure to perform CPR but rather on denial of "prompt and necessary medical care" after Jaime was shot. Mr. and Ms. Reyes appear to claim that Officers 1-4 were obligated to seek medical care after they fired the first volley of shots rather than proceed to fire a second volley of shots. Mr. and Ms. Reyes rely on complaint allegations of delay arising from Officers 1-4's frisking and handcuffing Jaime and the elapse of 20 minutes before the arrival of paramedics.

Mr. and Ms. Reyes point to no pertinent authority to substantiate Officer 1-4's conduct as deliberate indifference. Mr. and Ms. Reyes attempt to equate without supporting authority the deliberate indifference standard to something akin to negligence. Mr. and Ms. Reyes further ignore protocol and the need to secure safely Jaime, especially given complaint allegations that Ms. Reyes had informed Officers 1-4 that Jaime suffered "from mental disturbance due to methamphetamine use." The complaint lacks facts to support inferences of deliberate indifference to Jaime's medical needs to warrant dismissal of such claims.

## **Limited Fourth Amendment Claims For Jaime's Estate**

The complaint's (first) section 1983 claim alleges deprivation of rights under the First and Fourteenth Amendments. Defendants fault an attempt to assert survival claims under the First and Fourteenth Amendments for Jaime's estate in that survival claims must be analyzed under the Fourth Amendment. Defendants seek dismissal of First and Fourteenth Amendment claims for Jaime's estate.

### *Personal Fourth Amendment Rights*

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. U.S.*, 394 U.S. 165, 174, 89 S.Ct. 961 (1969). "[O]nly the person whose Fourth Amendment rights were violated can sue to vindicate those rights." *Moreland v. Las Vegas Metropolitan Police Dept.*, 159 F.3d 365, 369 (9th Cir. 1998).

A "section 1983 claim that accrued before death survives the decedent when state law authorizes a survival action as a 'suitable remed[y] . . . not inconsistent with the Constitution and laws of the United

States.'" *Smith v. City of Fontana*, 818 F.2d 1411, 1416 (9th Cir. 1987) (quoting 42 U.S.C. § 1988), *overruled on other grounds*, *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999)). "In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." *Moreland*, 159 F.3d at 369. "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Moreland*, 159 F.3d at 369.

Under California law, "a cause of action for . . . a person is not lost by reason of the person's death, but survives . . ." Cal. Code Civ. Proc., § 377.20(a). California Code of Civil Procedure section 377.30 addresses who may pursue a survival action for a decedent:

> A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, subject to [the California Probate Code] . . ., and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest.

Defendants do not challenge Mr. and Ms. Reyes' ability to pursue Fourth Amendment claims for Jaime's estate. Defendants challenge their ability to pursue other constitutional deprivations. Defendants argue that excessive force and unreasonable search and seizure claims "must be analyzed under the Fourth Amendment, not the First or Fourteenth amendments."

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide of analyzing these claims.'" *Albright*, 510 U.S. at 273, 114 S.Ct. at 813 (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989)). "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier,* 520 U.S. 259, 272, n. 7, 117 S.Ct. 1219 (1997). "An excessive use of force claim arising out of an arrest must be analyzed under the Fourth Amendment, rather than the Fifth or Fourteenth Amendments." *Conley v. City of Lorain*, 1999 WL 1021650, at *1 (6th Cir. 1999).

///

Mr. and Ms. Reyes appear to concede defendants' points and note that they "do not assert any claims for unreasonable search and seizure or excessive force based on the First and Fourteenth Amendments." As such, survival excessive force claims for Jaime's estate are limited to those available under the Fourth Amendment and are subject to dismissal to the extent based under the First and Fourteenth Amendment.

## **Duplicative First Amendment Claim**

The complaint's (first) section 1983 claim alleges deprivation of Mr. and Ms. Reyes' "right to companionship, society and support" as secured by the First Amendment. Defendants characterize such a First Amendment claim as "superfluous in light of the nearly-identical Fourteenth Amendment claim."

The "freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights. Such relationships may take various forms, including the most intimate." *Board of Directors of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 544, 107 S.Ct. 1940 (1987). "Both parents and children of a decedent have been found to have a constitutionally protected liberty interest in their familial relationship under the Fourteenth Amendment." *Kim v. City of Santa Clara*, 2010 WL 2034774, at *6 (citing *Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir.1991)). The standard for such a violation is based on substantive due process. *Kim*, 2010 WL 2034774, at *6 (citing *Moreland*, 159 F.3d at 371). However, the "freedom to associate guaranteed by the First Amendment protects associational interests related to speech and petition." *Thompson v. Ashe*, 250 F.3d 399, 407, n. 1 (6th Cir. 2001).

In *Ovando v. City of Los Angeles*, 92 F.Supp.2d 1011, 1017 (C.D. Cal. 2000), a fellow district Court explained that the right to intimate relationships is subject to the Fourteenth Amendment:

> The Supreme Court has recognized two types of free association rights: the right to intimate relationships and the right to associate for the purposes of engaging in the activities set forth in the First Amendment; i.e. speaking, worshiping, and petitioning the government. *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984); *IDK, Inc. v. County of Clark*, 836 F.2d 1185, 1192 (9th Cir.1988). The former is protected as a personal liberty under the Fourteenth Amendment, while the latter is protected by the First Amendment.

Defendants contend that since the complaint alleges Fourteenth Amendment claims for Mr. and Ms. Reyes, a First Amendment right to intimate associations claim "is superfluous and not legally cognizable" to warrant dismissal.


Mr. and Ms. Reyes respond that First Amendment familial association claim is cognizable and point to *Lee,* 250 F.3d at 685, where the Ninth Circuit observed:

> It is well established that a parent has a "fundamental liberty interest" in "the companionship and society of his or her child" and that "[t]he state's interference with that liberty interest without due process of law is remediable under [42 U.S.C. § ]1983." *Kelson v. City of Springfield*, 767 F.2d 651, 654–55 (9th Cir.1985) (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). "[T]his constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents." *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir.1987) *overruled on other grounds by Hodgers–Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir.1999). Moreover, "the First Amendment protects those relationships, including family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Board of Dir. v. Rotary Club*, 481 U.S. 537, 545, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 619–20, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)); *see also Conti v. City of Fremont*, 919 F.2d 1385, 1388–89 (9th Cir.1990).

Although the contours of a First Amendment familial association claim are unclear, those regarding a Fourteenth Amendment claim are more defined. As such, when a particular Amendment provides an explicit textual source of constitutional protection against particular government conduct, that Amendment must be the guide. *See Albright*, 510 U.S. at 273, 114 S.Ct. at 813. The weight of authorities indicates that the Fourteenth Amendment is the more precise source for familial association rather than the First Amendment. Moreover, Mr. and Ms. Reyes fail to challenge the duplicity of a First Amendment familial association claim to suggest its superfluousness. As such, a First Amendment familial association claim is subject to dismissal.

### California's Bane Act – Civil Code Section 52.1

The complaint's third claim alleges that defendants violated California Civil Code section 52.1 ("section 52.1") given Officers 1-4's "pointing their guns at Jaime Jr. in the absence of any threat or justification," "using excessive, unreasonable and unjustified force," and "denying Jaime Jr. prompt and necessary medical care."

Defendants fault the absence of a section 52.1 claim for Mr. and Ms. Reyes and facts to support a section 52.1 claim against Chief Dyer.

Section 52.1 permits a civil action against a person who interferes or attempts to interfere by threats, intimidation or coercion with "exercise or enjoyment" of rights secured by the U.S. and

13

1  California Constitutions and laws. "Section 52.1(b) provides a cause of action to any person who has
2  been denied rights under the laws of California." *Winarto v. Toshiba America Electronics Components,*
3  *Inc.*, 274 F.3d 1276, 1289, n. 13 (9th Cir. 2001), *cert. denied*, 537 U.S. 1098, 123 S.Ct. 816 (2003). The
4  necessary elements for a section 52.1 claim are: "(1) defendants interfered with plaintiff's constitutional
5  rights by threatening or committing violent acts; (2) that plaintiff reasonabley believed that if she
6  exercised her constitutional rights, defendants would commit violence against her []; (3) plaintiff was
7  harmed; and (4) defendants' conduct was a substantial factor in causing plaintiff's harm."
8  *Tolosko-Parker v. County of Sonoma*, 2009 WL 498099, at *5 (N.D. Cal. 2009).

9  Section 52.1 requires "an attempted or completed act of interference with a legal right,
10 accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334, 70 Cal.Rptr.2d 844
11 (1998). Nonetheless, "section 52.1 does not extend to all ordinary tort actions because its provisions are
12 limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right."
13 *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843, 87 P.3d 1. "[I]n pursuing relief for those
14 constitutional violations under section 52.1, plaintiffs need not allege that defendants acted with
15 discriminatory animus or intent, so long as those acts were accompanied by the requisite threats,
16 intimidation, or coercion." *Venegas*, 32 Cal.4th at 708, 87 P.3d 1. A defendant is liable under section
17 52.1 "if he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation,
18 or coercion." *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 882, 57 Cal.Rptr.3d 454
19 (2007).

20 "Section 52.1 does not provide any substantive protections; instead, it enables individuals to sue
21 for damages as a result of constitutional violations." *Reynolds v. County of San Diego*, 84 F.3d 1162,
22 1170 (9th Cir. 1996), *overruled on other grounds, Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir.
23 1997). "The Bane Act is simply not a wrongful death provision. It clearly provides for a personal cause
24 of action for the victim . . ." *Bay Area Rapid Transit Dist. v. Superior Court,* 38 Cal.App.4th 141, 145,
25 44 Cal.Rptr.2d 887 (1995). The Bane Act "is limited to plaintiffs who themselves have been the subject
26 of violence or threats." *Bay Area Rapid Transit*, 38 Cal.App.4th at 145, 44 Cal.Rptr.2d 887.

27 Defendants contend that a section 52.1 claim is barred to assert wrongful death claims for Mr.
28 and Ms. Reyes given "that the claim is personal to the person whose rights were violated" and cannot

be pursued as a wrongful death claim. Defendants conclude that Mr. and Ms. Reyes lack standing to pursue a section 52.1 claim "to the extent it is based on a wrongful death theory."

Mr. and Ms. Reyes concede that they may not pursue a section 52.1 wrongful death claim on their own behalf. As such, the complaint's (third) section 52.1 claim is subject to dismissal to the extent it alleges a wrongful death claim for Mr. and Ms. Reyes. The section 52.1 claim is not subject to dismissal to the extent it alleges a survival claim for Jaime.

In addition, defendants seek dismissal of the section 52.1 claim as to Chief Dyer in the absence of allegations that he "personally engaged in any conduct toward decedent that amounted to either an interference with decedent's rights or threats, intimidation, or coercion." Defendants further note Chief Dyer is not liable for his subordinates' improper conduct given California Government Code section 820.8 ("a public employee is not liable for an injury caused by the act or omission of another person").

Mr. and Ms. Reyes respond that a section 52.1 claim against Chief Dyer is viable given complaint allegations to the effect that Chief Dyer:

1. Created through "excessive and unreasonable actions," a risk of harm to Jaime;
2. Failed to provide and enforce "lawful and proper policies, procedures, and training programs";
3. Failed to properly "hire, train, supervise and discipline" Officers 1-4; and
4. Ratified Officers 1-4's "unconstitutional shooting of Jaime."

Mr. and Ms. Reyes attempt to hold Chief Dyer vicariously liable for Officers 1-4's conduct actionable under section 52.1. Mr. and Ms. Reyes point to no pertinent, binding authority to hold Chief Dyer vicariously liable. The complaint lacks facts the Chief Dyer personally or directly interfered with or attempted to interfere with Jaime's rights. Allegations as to Chief Dyer's conclusory, indirect actions are insufficient to support section 52.1 liability to warrant dismissal of the section 52.1 claim against him. Mr. and Ms. Reyes propose no additional facts to conclude differently.

**Chief Dyer's Official Capacity**

The complaint names Chief Dyer as a defendant "in his individual and official capacities." Defendants contends that suing Chief Dyer in his official capacity is duplicative given that the complaint names the City as a defendant.

15

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018 (1978). The U.S. Supreme Court has further explained:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. . . . Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." . . . As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165-166, 105 S.Ct. 3099 (1985) (citations omitted).

An official capacity action is not against the public employee personally, "for the real party in interest is the entity." *Graham*, 473 U.S. at 166, 105 S.Ct. 3099. "An official capacity suit against a municipal officer is equivalent to a suit against the entity." *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff,* 533 F.3d 780, 799 (9th Cir. 2008).

Local government officials sued in their official capacities are "persons" under section 1983 in cases where a local government would be suable in its own name. *Monell*, 436 U.S. at 690, n. 55, 98 S.Ct. 2018. "For this reason, when both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed." *Luke v. Abbott*, 954 F.Supp. 202, 203 (C.D. Cal. 1997) (citing *Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996). "Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 (9th Cir. 2002).

"[I]t is no longer necessary or proper to name as a defendant a particular local government officer acting in official capacity." *Luke*, 954 F.Supp. at 204. As the district court in *Luke*, 954 F.Supp. at 204, explained:

> A plaintiff cannot elect which of the defendant formats to use. If both are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant. If only the official-capacity officer is named, it would be proper for the Court upon request to dismiss the officer and substitute instead the local government entity as the correct defendant.

*See Vance*, 928 F.Supp. at 996 ("if individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are

1  duplicative and should be dismissed").

2  Defendants argue that claims against Chief Dyer in his official capacity are claims against the
3  City to render the official capacity claims redundant and wasteful.  Mr. and Ms. Reyes concede as much.
4  The complaint's claims against Chief Dyer in his official capacity are subject to dismissal.

## Injunctive Relief

6  The complaint's prayer seeks injunctive relief, including prohibitions on interference with civil
7  rights and requiring proper investigations, lawful policies, and police officer training.  Defendants
8  challenge Mr. and Ms. Reyes' standing to seek injunctive relief in absence of allegations that they "will
9  be subjected to the use of deadly force" by City police officers or that "they are realistically threatened
10 by a repetition of the alleged excessive use of deadly force" against Jaime.

11 To obtain injunctive relief, a plaintiff must demonstrate "the likelihood of substantial and
12 immediate irreparable injury, and the inadequacy of remedies at law." *See City of Los Angeles v. Lyons*,
13 461 U.S. 95, 103, 103 S.Ct. 1660 (1983).  The U.S. Supreme Court recognizes that "the need for a
14 proper balance between state and federal authority counsels restraint in the issuance of injunctions
15 against state officers engaged in the administration of the states' criminal laws in the absence of
16 irreparable injury which is both great and immediate." *Lyons*, 461 U.S. at 112, 103 S.Ct. 1660.

17 Defendants hold Mr. and Ms. Reyes to each establish "a 'realistic risk' that he or she would be
18 subjected to deadly force by Fresno Police Department officers in the future."  Defendants point to the
19 absence of facts to support Mr. and Ms. Reyes' future harm to subject injunctive relief claims to
20 dismissal.

21 Mr. and Ms. Reyes respond that "injunctive relief is appropriate where defendants have engaged
22 in a persistent pattern or policy of unlawful conduct."  Mr. and Ms. Reyes contend that they may pursue
23 injunctive relief in the absence of challenge to the complaint's *Monell* claims.  Mr. and Ms. Reyes
24 conclude that the complaint adequately alleges "a persistent pattern of misconduct by Defendants."

25 Mr. and Ms. Reyes' arguments are as broad and conclusory as the injunctive relief they seek.
26 The complaint seeks prohibitions of unreasonable searches and seizures, excessive force, and engaging
27 in a "code of silence."  The complaint further seeks affirmative relief in effect to improve investigations
28 of officer shootings, policies to stop and detain individuals, training on use of force, and handling

emotionally/mentally disturbed persons and medical emergencies. The complaint lacks facts to support great and immediate irreparable harm to Mr. and Ms. Reyes or the public and in turn to justify the far reaching requested injunctive relief, the claims for which are subject to dismissal.

### **Punitive Damages Against Chief Dyer**[2]

Defendants challenge the complaint's attempt to impose punitive damages against Chief Dyer in absence of facts that Chief Dyer acted with malice, oppression or in reckless disregard of Jaime's constitutional rights. *See Dang v. Cross*, 422 F.3d 800, 809-810 (9th Cir. 2005). Defendants point to the absence of allegations that Chief Dyer "was personally involved in the incident that led to the death of Jaime Reyes, Jr."

Mr. and Ms. Reyes respond that Chief Dyer and other policymakers are aware of the details of Jaime's shooting, "have direct knowledge" that the shooting was unconstitutional, and have "deliberately chosen to endorse the shooting." Mr. and Ms. Reyes conclude that the complaint reflects the "complete indifference to plaintiff's safety or rights" and the "abuse of authority or power."

Similar to their injunctive relief claim, Mr. and Ms. Reyes rely on generalities to support their punitive damages claim against Chief Dyer, which with dismissal of the section 52.1 claim against him, proceeds under the complaint's (second) *Monell* claim. Mr. and Ms. Reyes point to the complaint's conclusory allegations of "intentional, wanton and/or willful, conscience shocking, reckless, malicious, deliberately indifferen[ce] to Plaintiffs' rights, done with actual malice." Such conclusions fail to support punitive damages claims against Chief Dyer. *See Cyrus v. Haveson*, 65 Cal.App.3d 306, 316-317, 135 Cal.Rptr. 246 (1976) ("To support punitive damages, the complaint . . . must allege ultimate facts of the defendant's oppression, fraud, or malice"). The complaint lacks, and Mr. and Ms. Reyes fail to offer, elemental facts of Chief Dyer's conduct to support punitive damages to warrant dismissal of punitive damages claims against him.

///

///

---

[2] Defendants seek to strike the complaint's punitive damages claims under F.R.Civ.P. 12(f). However, this Court will analyze punitive damages claims under F.R.Civ.P. 12(b)(6) standards. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 971 (9th Cir. 2010) ("We therefore hold that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law.")

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES with prejudice the (first) section 1983 claim to the extent based on lawful detention/seizure of Jaime;

2. DISMISSES with prejudice the (first) section 1983 claim to the extent based on deliberate indifference to Jaime's medical needs;

3. LIMITS survival excessive force claims for Jaime's estate to those available under the Fourth Amendment and DISMISSES with prejudice survival excessive force claims based on Amendments other than the Fourth Amendment;

4. DISMISSES with prejudice and as superfluous the (first) section 1983 familial association claim to the extent based on the First Amendment;

5. DISMISSES with prejudice the (third) section 52.1 claim to the extent that it alleges a wrongful death claim for Mr. and Ms. Reyes;

6. DISMISSES with prejudice the (third) section 52.1 claim against Chief Dyer only;

7. DISMISSES with prejudice this action against Chief Dyer to the extent he is named in his official capacity;

8. DISMISSES with prejudice the complaint's injunctive relief claims;

9. DISMISSES with prejudice the complaint's punitive damages claims against Chief Dyer; and

10. ORDERS defendants, no later than June 3, 2013, to file and serve an F.R.Civ.P. 7(a)(2) answer to the complaint.

IT IS SO ORDERED.

Dated:   May 15, 2013            /s/  Lawrence J. O'Neill
                                 UNITED STATES DISTRICT JUDGE